RELIANCE STEEL PRODUCTS
COMPANY, Plaintiff, Appellee,

v.

NATIONAL FIRE INSURANCE
COMPANY OF HARTFORD,
Defendant, Appellant.

No. 88–1870.

United States Court of Appeals,
First Circuit.

Heard May 2, 1989.

Decided May 25, 1989.

Patrick J. Quinlan, Providence, R.I., for defendant, appellant.

Christopher C. Whitney with whom Peter Lawson Kennedy and Adler Pollock & Sheehan Inc., Providence, R.I., were on brief, for plaintiff, appellee.

Before CAMPBELL, Chief Judge, SELYA, Circuit Judge, and GRAY,[*] Senior District Judge.

SELYA, Circuit Judge.

We have read the hippopotamic record in this construction controversy and carefully considered the contestants' briefs and oral arguments. For the reasons which follow, we believe that the appeal comprises much cry, but little wool. Therefore, save in one relatively small respect, we affirm.

I

Like Leviathan from the vasty deep, this litigation arises out of a decision by the Rhode Island Turnpike and Bridge Authority (RITBA) to renovate portions of the Mt. Hope Bridge, a venerable but much-used structure connecting Bristol County with Aquidneck Island.[1] RITBA let the general contract to Dick Corporation (Dick). A payment bond was provided by defendant-appellant National Fire Insurance Company (Nafinco). Dick contracted with a number of materialmen, one of whom, plaintiff-appellee Reliance Steel Products Company (Reliance), was to supply certain specialty steel items.

---

[*] Of the Central District of California, sitting by designation.

1. The bridge crosses Mt. Hope Bay (a portion of Narragansett Bay) from a point in the town of Bristol to a point in the town of Portsmouth. Other Aquidneck Island communities served by the bridge include Little Compton, Middletown, Newport, and Tiverton.

The project did not go smoothly, much delay ensuing. Suppliers, including Reliance, went unpaid at job's end. Dick demanded, unsuccessfully, that RITBA extend the contract completion date, rescind penalties for tardiness, and reimburse delay-related costs. RITBA granted some relief, but not to Dick's expectations. Meantime, Reliance decided to wait no longer for its money and sued the surety in federal district court, invoking diversity jurisdiction. 28 U.S.C. § 1332(a).

After a bench trial, the district court issued a comprehensive 26–page opinion. *Reliance Steel Products Co. v. Nafinco*, No. 86–0465–B (D.R.I. July 28, 1988) (unpublished) (D.Ct.Op.). The court determined that Reliance neither caused nor materially contributed to any delays, *id.* at 16, but that Reliance did breach warranties by supplying some defective riser bars, *id.* at 19, and by misfabricating certain grid panels, *id.* at 20. The balance due Reliance for its goods was $508,000.74, *id.* at 5 & n. 1, as against which the court ordered setoffs of $53,804.64 ($33,897.90 for riser bar repairs and $19,906.74 for grid repairs). *Id.* at 23–25. Judgment entered for plaintiff for the net amount due ($508,000.74 − $53,-804.64 = $454,196.10). Nafinco appealed.

## II

Having explored the record, we see little reason to linger. The controversy between the parties was fact-intensive. The evidence was in some conflict, featuring outright contradictions on some points and marked inconsistencies as to others. In those areas where the underlying facts were essentially undisputed, divergent inferences could often be drawn. Disputes of this nature are the staples of a trial court's diet, and comprise an unappetizing, usually unnourishing, bill of fare for appellate digestion. This case is no exception.

■ When a district court sits without a jury, the court of appeals cannot undertake to decide factual issues afresh. "We are not at liberty to prepare a palimpsest." *Keyes v. Secretary of the Navy*, 853 F.2d 1016, 1019 (1st Cir.1988). As the Civil Rules direct:

In all actions tried upon the facts without a jury ... the court shall find the facts specially and state separately its conclusions of law thereon.... Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses.

Fed.R.Civ.P. 52(a). When, as in this case, the clearly-erroneous standard guides our review of an appeal, the trier's "findings are to be set aside only if, on the entire evidence, we are 'left with the definite and firm conviction that a mistake has been committed.'" *In re Tully*, 818 F.2d 106, 109 (1st Cir.1987) (quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 541, 92 L.Ed. 746 (1948)). To make the cheese more binding, we note that the "clearly erroneous" rule has wide applicability: it governs findings of fact about (1) the significance of documentary evidence, *see Anderson v. City of Bessemer City*, 470 U.S. 564, 573–76, 105 S.Ct. 1504, 1511–13, 84 L.Ed.2d 518 (1985); *RCI Northeast Services Div. v. Boston Edison Co.*, 822 F.2d 199, 202–03 (1st Cir.1987); (2) the *factual* meaning of contract provisions, *id.* at 203; *Boston Five Cents Savings Bank v. Secretary of the Dep't of HUD*, 768 F.2d 5, 8 (1st Cir.1985); and (3) what an actor intended. *Anderson*, 470 U.S. at 566, 105 S.Ct. at 1507; *Keyes*, 853 F.2d at 1019. Furthermore, "[w]here the conclusions of the [trier] depend on its election among conflicting facts or its choice of which competing inferences to draw from undisputed basic facts, appellate courts should defer to such fact-intensive findings, absent clear error." *Irons v. FBI*, 811 F.2d 681, 684 (1st Cir.1987).

## III

■ Given the details of the instant record, we build easily on this foundation. Appellant purports to raise five issues, but they boil down to a pair. Nafinco says, in several different ways, that the district court was wrong in deciding that Reliance was blameless in regard to the delays

which plagued rehabilitation of the bridge. It also says that the court took too narrow a view of the problems associated with off-quality goods supplied by plaintiff.

On the matter of delay, there is little we can add to the district court's thorough explication. *See, e.g.,* D.Ct.Op. at 7–16. In a nutshell, the court's conclusions (1) that the work was arrested by a variety of delay-inducing problems not attributable to Reliance, *see generally id.,* and (2) that Nafinco "failed to prove that Reliance caused delays to the bridge project which would warrant any offsets against the balance due to it," *id.* at 16, are amply supported by constitutive evidence. Whether or not we, sitting as a nisi prius court, would have reached the same conclusions is beside the point. "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Anderson,* 470 U.S. at 574, 105 S.Ct. at 1511.

The matter of defective merchandise, for the most part, comes under the same rubric. For example, appellant argues forcefully that no fewer than seven major problems arose because of inferior, late-delivered grid. But, the mere repetition of arguments, in strong language and with evident feeling, is insufficient to the task. Though Nafinco rehearses the evidence favorable to its contentions, and reargues the weight and purport of that evidence, it falls well shy of persuading us that the district court's contrary view of the same facts was unsupportable.

All in all, save for one modification, *see infra,* we believe that the judgment below must be affirmed. And, because we deem the trial court's opinion to be thorough and well-considered, we ground our affirmance on it. We add only a few comments.

1. Appellant tries to wriggle out from beneath Rule 52(a) by claiming that the district court mistook the law. To be sure, "a finding of fact predicated upon, or induced by, a misapprehension of law is robbed of its customary vitality." *RCI*

*Northeast,* 822 F.2d at 203. That principle, however, is inapposite in this case. The matters to which Nafinco alludes represent factfinding (albeit factfinding inimical to appellant's position) and evince no misunderstanding of the law. The "clearly erroneous" rule cannot be evaded by the simple expedient of creative relabelling. To paraphrase Gertrude Stein: facts are facts are facts. And, we will not permit parties to profit by dressing factual disputes in "legal" costumery.

We need not belabor the obvious, but do offer one example of precisely this sort of masquerade. Nafinco castigates, as *legal* error, the district court's statement that, "[h]ad Reliance caused any delays, it would have been reasonable [for Dick] to seek an extension" based thereon from RITBA. D.Ct.Op. at 16. But, this was quintessentially a finding of *fact.* Dick's agents represented to RITBA that the delays were caused by a variety of factors—none attributable to plaintiff. The question is not, as appellant would have it, whether Reliance's alleged blunders would have constituted legal ground for delay as between the general contractor and the owner. The question is whether Dick's course of conduct—offering RITBA a litany of reasons for tardy performance, yet not listing problems with Reliance among them—permitted a reasonable inference that Dick's claim against Reliance was an afterthought, and insubstantial. We think that it did. Though Dick tried to minimize what had occurred as mere "posturing," the district court was not obliged to accept that self-serving characterization.[2] Instead, the court drew what strikes us as a perfectly permissible inference. The inquiry was properly resolvable as one of fact.

2. In regard to problems allegedly associated with misfabrication, defendant elected to paint with a broad brush. It offered generalized evidence that many unanticipated man hours were spent, and considerable extra expense incurred, in Dick's performance of the contract. Yet, Nafinco

---

**2.** We are reminded once again that "[h]aving one's cake and eating it, too, is not in fashion in this circuit." *United States v. Tierney,* 760 F.2d

382, 388 (1st Cir.), *cert. denied,* 474 U.S. 843, 106 S.Ct. 131, 88 L.Ed.2d 108 (1985).

made no real effort to break down these incondite records into meaningful subcategories possessing evidentiary significance, notwithstanding that it had the devoir of persuasion on the matter of setoff. *See National Chain Co. v. Campbell*, 487 A.2d 132, 134–35 (R.I.1985). As a result, the district court was well within its proper domain in concluding that Nafinco proved entitlement only to a limited group of credits.[3]

It is no answer, as appellant blithely suggests, that "[s]imple logic" mandated recovery of further losses. Appellant's Reply Brief at 8. Nafinco uses equipment costs as an example:

> Certainly if a welding machine is used for one hour repairing a [defective] riser bar, that welding machine *can not* be used on any productive work during that hour. The primary equipment billed was welding machines used to straighten and repair misfabricated items. [Appellant] is entitled to recover for the equipment hours expended repairing the defective products for these hours which were diverted from the productive work on the bridge.

*Id.* (emphasis in original). Yet, construction equipment is usually rented and, whether owned or leased, frequently lies idle for long periods at the job site. Absent some concrete showing that, say, *additional* welding machines had to be procured because of defendant's errors, or other work was delayed because welding machines were diverted to riser bar repairs, use of the welding equipment was a meaningless datum.[4] Although there is "often more than one satisfactory method" for proving damages, *Northern Heel Corp. v. Compo Indus. Inc.*, 851 F.2d 456, 473 (1st Cir.1988), a claimed element of loss must be computed in some rational way upon a firm factual base. Ignoring this fundamental rule may have been simple, but it was surely not logical.

## IV

■ There is one area in which the decision below was inconsistent, and therefore, clearly wrong. In calculating allowable setoffs, the district judge awarded overhead and profit increments on repair expenses attributable to misfabricated grid sections, but omitted these increments when figuring credits attributable to riser bar repairs. At oral argument, appellee's counsel conceded that Nafinco was entitled to a larger credit based on this omission. Under the applicable formula for overhead and profit (which neither party contests), Reliance was entitled to a riser bar repair credit of $41,016.46,[5] and thus, to an overall setoff (including credit for grid deficiencies) of $60,923.20. On remand, the judgment should be vacated and reentered to reflect a balance owed by defendant to plaintiffs, after all applicable credits, in the amount of $447,081.54, plus interest and costs.

## V

We need go no further. With the sole exception of overhead and profit on the riser bar offset—a rather small tail attached to a rather large dog—the district

---

**3.** Because this is so, we need not reach—and take no view of—appellee's contention that entitlement to credits beyond those awarded was undermined by Dick's acceptance of the wares and its ostensible failure thereafter to notify Reliance of asserted defects within a reasonable time. *See* R.I. Gen.Laws § 6A–2–607(3)(a).

**4.** The trial judge specifically asked appellant's key witness if the equipment used for repairs would have been on the job site anyway, and received an affirmative answer. Neither this witness, nor any other, identified any work which was delayed by use of the machinery during riser bar repairs.

**5.** To make the computation, one calculates direct repair costs, adds thereto a 10% markup for overhead, reaches a new subtotal, and adds a further 10% markup representing the contractor's hypothetical profit. In this instance, the court supportably found the direct costs of riser bar repairs to be $33,897.90, but neglected to add overhead and profit. The correct computation should have been:

| | | |
|---|---|---|
| Direct costs (recoverable riser bar repairs) | — | $33,897.90 |
| Overhead (10%) | — | 3,389.79 |
| | Subtotal | $37,287.69 |
| Profit (10%) | — | 3,728.77 |
| | Total | $41,016.46 |

court's findings and conclusions pass muster. Close attention to the record fails to convey the impression that any other error infected the proceedings below. At bottom, Nafinco's jeremiad reduces to a complaint that the district judge disbelieved certain of its evidence and drew a series of inferences adverse to its perceived interests. That may be so. But, given the evidence in this record, the court of appeals is simply not a suitable forum for relitigating such factbound matters.

*We affirm the judgment below, but direct that, on remand, it be modified to reflect the calculations set forth in Part IV of our opinion. The district court may also make such other adjustments, if any, as may be necessary in light of this opinion. We award two-thirds (⅔s) costs to appellee.*