# United States Court of Appeals
## For the First Circuit

No. 09-1965

SAN JUAN CABLE LLC d/b/a ONELINK COMMUNICATIONS,

Plaintiff, Appellant,

v.

PUERTO RICO TELEPHONE COMPANY, INC.,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Gustavo A. Gelpí, U.S. District Judge]

Before

Howard, Selya and Thompson, Circuit Judges.

Thomas J. McCormack, with whom Dana Frix, Karl H. Buch, Chadbourne & Parke, and Guillermo J. Ramos-Luiña were on brief, for appellant.
Lynn R. Charytan, with whom Mark C. Flemming, Samir Jain, Anne H. Sherwood, and Wilmer Cutler Pickering Hale and Dorr LLP were on brief, for appellee.

July 15, 2010

**SELYA**, **Circuit Judge**. This appeal presents two separate, but related, issues of statutory construction. The first poses a question that has not been answered at the federal appellate level: does a cable operator have an implied private right of action to enforce section 541(b)(1) of the Cable Communications Policy Act of 1984 (Cable Act), 47 U.S.C. § 541(b)(1), against a rival who has violated that provision? The second issue requires us to revisit a question that we have answered before: does a cable operator have standing, under section 401(b) of the Communications Policy Act of 1984 (Communications Act), 47 U.S.C. § 401(b), to enforce rulemaking orders promulgated by the Federal Communications Commission (FCC) against a rival who has transgressed those orders?

The district court answered both of these queries in the negative. On the first question, it held that section 541(b)(1) of the Cable Act did not give rise to an implied private right of action. See San Juan Cable LLC v. P.R. Tel. Co., 623 F. Supp. 2d 189, 196 (D.P.R. 2009). On the second question, it deemed itself bound by circuit precedent and therefore ruled that the cable operator lacked standing to enforce prohibitions contained in two FCC rulemaking orders. Id. at 197. Accordingly, the court dismissed the plaintiff's amended complaint.

We affirm the judgment below. As a matter of first impression, we conclude that section 541(b)(1) of the Cable Act does not give rise to an implied private right of action. Then,

holding fast to circuit precedent, we reiterate that a private cable operator lacks standing to enforce either of the two FCC orders at issue here.

## I. BACKGROUND

This appeal arrives on our doorstep following an order of dismissal entered under Federal Rule of Civil Procedure 12(b)(6). Consequently, we take the facts from the plaintiff's amended complaint and draw all reasonable inferences therefrom in its favor. SEC v. Tambone, 597 F.3d 436, 441-42 (1st Cir. 2010) (en banc).

The plaintiff, San Juan Cable LLC, doing business as OneLink Communications (we shall refer to it by that trade name), is among three firms that provide cable television service in Puerto Rico. Its would-be competitor, defendant Puerto Rico Telephone Company, Inc. (PRTC), furnishes local telephone service throughout the island. The underlying litigation has its genesis in PRTC's decision to expand its service line to include cable television.

Before a new entrant can offer cable service, the Cable Act requires it to obtain a franchise from the relevant franchising authority. 47 U.S.C. § 541(b)(1). In February of 2006, PRTC, through an affiliate, filed an application for such a franchise with the Telecommunications Regulatory Board of Puerto Rico (the Board). Although that application was not granted, testimony

-3-

during a hearing before the Board indicated that the construction of PRTC's cable system was already underway. We assume, without deciding, that the commencement of construction prior to the procurement of a franchise violates section 541(b)(1) of the Cable Act.

In December of 2008, PRTC filed both a second franchise application and a request for special temporary authority (STA). The STA request sought a green light for PRTC to continue to construct its cable system and to provide cable service to some of its employees as part of a beta test. The Board granted the STA, which allowed PRTC to undertake the specified activities in advance of obtaining a franchise.

Dismayed by this development, OneLink moved to intervene in the administrative proceedings and sought a stay of the STA. When the Board rebuffed these entreaties, OneLink petitioned for judicial review in the local courts.[1]

During this same time frame, OneLink opened a second front in its war against its would-be rival: it sued in the federal district court, seeking to enjoin PRTC from either constructing a cable system or providing cable service unless and until the Board awarded a franchise. The district court made a preliminary finding

---

[1] There is no need to rehearse the details of the litigation in the local courts. For present purposes, it suffices to note two facts: the case remains open, and the Supreme Court of Puerto Rico has stayed the administrative proceedings for the time being.

that PRTC had violated the Cable Act by prematurely beginning construction and testing activities, see San Juan Cable LLC v. Telecomms. Reg'y Bd., 598 F. Supp. 2d 233, 238 (D.P.R. 2009), and threatened to issue a preliminary injunction. In a flurry of responsive filings, the Board represented that it would withdraw the STA approval, and PRTC represented that it would discontinue the challenged activities. On February 24, 2009, the district court dismissed the action as moot.

OneLink alleges that, notwithstanding its representations, PRTC took further pre-franchise steps toward construction of its proposed cable system. As a counter-measure, it brought the instant action, alleging that PRTC had transgressed section 541(b)(1) of the Cable Act by constructing a cable system over public rights-of-way and providing cable service without having obtained a franchise.[2] In an amended complaint, OneLink added a claim that PRTC's actions violated two FCC orders. See In re Implementation of Section 621 (a)(1) of the Cable Communications Policy Act of 1984, 22 FCC Rcd. 5101, 5155 (Mar. 5, 2007) (2007 Order); In re Amendment of Part 94 of the Commission's Rules to Permit Private Video Distrib. Sys. of Video Entm't Access to the 18 GHz Band, 6 FCC Rcd. 1270, 1272 (Feb. 28, 1991) (1991 Order).

_____

[2] OneLink initially moved for relief from the judgment in the original action. See Fed. R. Civ. P. 60(b). It abandoned the motion and, instead, brought a new action at the district court's suggestion.

PRTC moved to dismiss the amended complaint. Pertinently, it argued that (i) the Cable Act does not afford a cable operator a private right of action to enforce section 541(b)(1) against a potential rival, and (ii) the Communications Act does not confer standing on a private party to enforce either the 2007 Order or the 1991 Order. This timely appeal followed.

## II. ANALYSIS

We bifurcate our analysis of OneLink's claims, beginning with its contention that an implied private right of action exists under section 541(b)(1) of the Cable Act and ending with its contention that it possesses standing to enforce the 2007 Order and the 1991 Order against PRTC. Because both contentions turn on abstract questions of law, the district court's answers to them engender de novo review. Sterling Suffolk Racecourse Ltd. v. Burrillville Racing Ass'n, 989 F.2d 1266, 1268 (1st Cir. 1993).

### A. The Cable Act Claim.

Congress passed the Cable Act in order to fashion a national policy that would "promote competition in cable communications" and "assure that cable communications provide and are encouraged to provide the widest possible diversity of information sources and services to the public." 47 U.S.C. § 521. The Act's franchising provisions are an integral part of this national policy. In drafting those provisions, Congress sought to formulate "franchise procedures and standards which encourage the

growth and development of cable systems" and to "establish an orderly process for franchise renewal which protects cable operators against unfair denials of renewal." Id.

These provisions create a decentralized franchising regime, in which local authorities award (or decline to award) franchises for the provision of cable service in particular areas. Id. § 541(a)(1). Once a cable operator receives a franchise, it enjoys the right to build a cable system over public rights-of-way and through compatible easements. Id. § 541(a)(2). It may then provide cable service in the franchised area. See id. § 541(b)(1). Without a franchise, the provision of cable service is forbidden. Id.

OneLink claims that PRTC jumped the gun by undertaking construction and testing activities without having obtained a franchise. In its view, these premature actions violated section 541(b)(1). As a threshold matter, its attempt to enforce that statute against PRTC hinges on whether the Cable Act grants it a private right of action for that purpose. It is to this question that we now turn.

OneLink concedes that the text of the statute does not confer an express private right of action. The question, then, reduces to whether a private right of action can be implied.

At the end of the day, this is a question of statutory interpretation. Transamerica Mortg. Advisors, Inc. (TAMA) v.

Lewis, 444 U.S. 11, 15 (1979). Hence, the conventional tools of statutory construction serve as useful implements. See Thompson v. Thompson, 484 U.S. 174, 179 (1988).

Unlike other questions of statutory interpretation, however, the scales are tilted. The baseline rule is that a federal statute ordinarily should be read as written, in effect creating a presumption against importing, by implication, a private right of action. See Frazier v. Fairhaven Sch. Comm., 276 F.3d 52, 68 (1st Cir. 2002); see also Alexander v. Sandoval, 532 U.S. 275, 287-88 (2001). This de facto presumption has considerable bite; it "can be overcome only by compelling evidence of a contrary congressional intent." Frazier, 276 F.3d at 68. "[T]he ultimate issue is whether Congress intended to create a private right of action." California v. Sierra Club, 451 U.S. 287, 293 (1981).

Against this backdrop, we look first to the text and structure of the Cable Act. See TAMA, 444 U.S. at 16; Frazier, 276 F.3d at 68. That perscrutation reveals a wealth of evidence that Congress did not intend to foster private enforcement of section 541(b)(1). The text of the Cable Act is replete with express private rights of action. See, e.g., 47 U.S.C. §§ 551(f)(1), 553(c)(1), 554(g). This circumstance reveals with conspicuous clarity that Congress knew how to provide for a private right of action when it deemed such a right appropriate. Given Congress's persistent employment of express private rights of action in the

Cable Act, it would be inconsistent to imply additional private rights of action. The hoary maxim "expressio unius est exclusio alterius" comes readily to mind.

We think it particularly noteworthy that Congress provided an express private right of action in favor of cable operators with respect to the enforcement of an adjacent provision in the very same section of the Cable Act that OneLink seeks to use. That provision explicitly permits a cable operator to sue a franchising board for an "unreasonabl[e] refus[al] to award a[] . . . franchise." Id. § 541(a)(1). Yet, Congress did not include similar language in section 541(b)(1). The inclusion of an express private right of action in a statutory provision and the exclusion of similar language in a neighboring provision gives rise to an inference that the exclusion was purposeful. See Nashoba Commc'ns, Ltd. v. Town of Danvers, 893 F.2d 435, 440 (1st Cir. 1990).

An analysis of the types of private rights of action that Congress expressly extended to cable operators strengthens this inference. Under the Cable Act, cable operators are empowered to sue franchising boards for denying a suitor's franchise application, 47 U.S.C. § 541(a)(1), refusing to modify the requirements of a suitor's franchise, id. § 545(b)(1), refusing to renew a suitor's franchise, id. § 546(e)(1), and failing to follow specified procedural rules with respect to a suitor's application, id. A common denominator characterizes all of these private rights

of action: each of them enables a cable operator (or prospective cable operator) to enforce a provision of the Cable Act to preserve and protect its ability to provide cable service.

Here, however, OneLink envisions a private right of action of a very different ilk — one which, if validated, will enable it to enforce a provision of the Cable Act against another cable operator in order to prevent that operator from providing cable service. Such an outward-looking private right of action is incongruous when viewed in conjunction with the inward-looking private rights of action expressly granted in the Cable Act. It is, therefore, highly unlikely that Congress intended to allow a cable operator to enforce section 541(b)(1) against a competitor (actual or aspiring).

To cinch matters, implication of a private right of action would be at odds with the paramount goals of the Cable Act. In crafting this legislation, Congress sought to promote competition in the cable industry and ensure the widest possible diversity of cable offerings. See id. § 521; see also Rollins Cablevue, Inc. v. Saienni Enters., 633 F. Supp. 1315, 1318 (D. Del. 1986). At the center of this statutory scheme, the local franchising board stands as a watchful sentinel guarding the portals of entry into the cable market. To ensure that would-be cable operators are not unfairly deprived of an opportunity to enter the marketplace, Congress created express private rights of

-10-

action aimed at allowing an applicant or franchise-holder to challenge a variety of board decisions that directly affect its own right to provide cable service. See, e.g., 47 U.S.C. §§ 541(a)(1), 545(b)(1), 546(e)(1). Relatedly, Congress strove to promote diversity by prohibiting any award of exclusive cable franchises. Id. § 541(a)(1). Given the architecture of this scheme, we can think of no reason why Congress would have wanted to afford incumbent cable operators the ability to thwart potential competition from new market entrants by pursuing private rights of action.

OneLink makes two counter-arguments. In the first instance, it places heavy reliance on cases holding that a cable operator enjoys a private right of action to enforce the provisions of section 541(a)(2). See, e.g., Media Gen. Cable of Fairfax, Inc. v. Sequoyah Condo. Council, 991 F.2d 1169, 1171-72 (4th Cir. 1993); Centel Cable T.V. Co. of Fla. v. Admiral's Cove Assocs., 835 F.2d 1359, 1364 (11th Cir. 1988). This reliance is mislaid.

Section 541(a)(2) extends to franchise-holding cable operators the right to construct cable systems over public rights-of-way and through compatible easements. In each of the cases cited by OneLink, the court concluded that a cable operator could sue a third party (a landowner or developer) who impeded access to a compatible easement and thereby obstructed the construction of

the plaintiff's own cable system.  See Media Gen., 991 F.2d at 1171; Centel, 835 F.2d at 1360-61, 1364.

These decisions are inapposite.  They involve a statutory provision that grants to a cable operator a specific right necessary to ensure the construction of its own cable system.

The statutory provision at issue here is of a different character.  It contains no analogous grant of a special right but, rather, prohibits any and all persons from operating a cable system without a franchise.  The difference between a rights-granting statute and a purely prohibitory statute is significant in determining the existence vel non of an implied private right of action.  See Gonzaga Univ. v. Doe, 536 U.S. 273, 283-84 (2002) (explaining that implied private right of action can only exist where Congress intended to create both a private right and a private remedy in a statute); Bonano v. E. Carib. Airline Corp., 365 F.3d 81, 84 (1st Cir. 2004) (same).

This is not the only distinction.  To the extent that the Cable Act allows private enforcement, it does so in service of a cable operator's (or would-be cable operator's) own franchise.  The cases cited by OneLink illustrate this point.  See Media Gen., 991 F.2d at 1170; Centel, 835 F.2d at 1360.  Here, however, there is no allegation that PRTC's actions have in any way interfered with OneLink's use of its own cable system.  OneLink's interest here is not in providing service but, rather, in heading off competition.

-12-

OneLink's second counter-argument is that implication of a private right of action is compelled under the four-factor test delineated in Cort v. Ash, 422 U.S. 66 (1975). Under that formulation, courts are directed to consult the following factors:

> Is the plaintiff a member of the class for whose "especial benefit" the statute was passed? Is there any cogent indication of legislative intent to create or deny the remedy sought? Would recognition of the remedy be "consistent with the underlying purposes" of the statutory scheme? Would it be inappropriate to infer a federal remedy because "the cause of action [is] one traditionally relegated to state law . . . "?

Royal Bus. Group v. Realist, Inc., 933 F.2d 1056, 1060 (1st Cir. 1991) (quoting and paraphrasing Cort, 422 U.S. at 78).

Our previous discussion forecloses this argument. The four Cort factors are not entitled to equal weight. See TAMA, 444 U.S. at 23. The second factor — congressional intent — is a potential trump card. The proponent of an implied private right of action cannot prevail under the four-factor Cort test in the face of a showing that Congress probably did not intend to create such a right. See Sandoval, 532 U.S. at 286-87 (explaining that without a showing of congressional intent to create a private remedy, "a cause of action does not exist and courts may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute"); TAMA, 444 U.S. at 23-24 (noting that, in determining the existence of an implied private right of action, the central inquiry is whether Congress intended to create

-13-

one); Buck v. Am. Airlines, Inc., 476 F.3d 29, 33 n.4 (1st Cir. 2007) (similar).  Here, there is no evidence of congressional intent to provide an implied private right of action — and there is ample evidence to the contrary.  Thus, pausing to analyze the first, third, and fourth Cort factors would be an empty exercise.

That ends this aspect of the matter.  We conclude, without serious question, that section 541(b)(1) of the Cable Act does not carry with it an implied private right of action in favor of an incumbent cable operator against a would-be rival.

## B.  **The Communications Act Claim**.

OneLink has another shot in its sling.  It asserts that PRTC violated two FCC orders and that it (OneLink) may enforce these orders.  It premises its assertion of standing on the Communications Act, 47 U.S.C. §§ 151-615b.  Specifically, it relies on section 401(b), which provides in pertinent part that "[i]f any person fails or neglects to obey any order of the [FCC] . . . any party injured thereby . . . may apply to the appropriate district court of the United States for the enforcement of such order."  47 U.S.C. § 401(b).

OneLink's assertion of standing runs headlong into circuit precedent.  We have held that section 401(b) may be used by aggrieved parties to enforce FCC orders that emanate from the Commission's adjudicatory process.  See New Engl. Tel. & Tel. Co. v. PUC of Me., 742 F.2d 1, 4-5 (1st Cir. 1984) (Breyer, J.).  We

-14-

also have held, however, that section 401(b) may not be used by an aggrieved party to enforce FCC orders promulgated through the Commission's <u>rulemaking</u> process.[3] <u>See</u> <u>id.</u> OneLink does not dispute that both the 2007 Order and the 1991 Order are rulemaking orders rather than adjudicatory orders. Thus, under the dichotomy established in <u>New England Telephone</u>, OneLink lacks standing to enforce those orders.

In an effort to parry this thrust, OneLink counters that <u>New England Telephone</u> was wrongly decided and invites us to overrule it. We decline the invitation.

The "law of the circuit" rule is a subset of stare decisis. It is one of the building blocks on which the federal judicial system rests. Under the rule, newly constituted panels in a multi-panel circuit court are bound by prior panel decisions that are closely on point. <u>See</u>, <u>e.g.</u>, <u>United States</u> v. <u>Rodríquez-Vélez</u>, 597 F.3d 32, 46 (1st Cir. 2010); <u>United States</u> v. <u>Wogan</u>, 938 F.2d 1446, 1449 (1st Cir. 1991).

Although this rule is not "immutable," <u>Carpenters Local Union No. 26</u> v. <u>U.S. Fid. & Guar. Co.</u>, 215 F.3d 136, 142 (1st Cir.

---

[3] There is a fundamental distinction between adjudicatory orders and orders promulgated through the rulemaking process. Adjudication is party-specific and "is concerned with the determination of past and present rights and liabilities." <u>Bowen</u> v. <u>Georgetown Univ. Hosp.</u>, 488 U.S. 204, 219 (1988) (quoting with approval 1947 Attorney General's Manual on the Administrative Procedure Act 13-14). In contrast, rulemaking is not party-specific but, rather, tends to focus on policy considerations and results in orders that are, by definition, orders of future effect.

-15-

2000), the exceptions are extremely narrow and their incidence is hen's-teeth-rare. Such exceptions come into play only when the holding of the prior panel is "contradicted by controlling authority, subsequently announced (say, a decision of the authoring court en banc, a Supreme Court opinion directly on point, or a legislative overruling)," United States v. Rodríguez, 527 F.3d 221, 225 (1st Cir. 2008), or in the "rare instances in which authority that postdates the original decision, although not directly controlling, nevertheless offers a sound reason for believing that the former panel, in light of fresh developments, would change its collective mind," Williams v. Ashland Eng'g Co., 45 F.3d 588, 592 (1st Cir. 1995).

OneLink proffers a trilogy of Supreme Court decisions to support its plaint that New England Telephone should be relegated to the scrap heap. None of these decisions affords a principled basis for overruling New England Telephone.

We can discard two of the decisions without ceremony; they predate New England Telephone, see Ambassador, Inc. v. United States, 325 U.S. 317, 321-22, 326 (1945), CBS v. United States, 316 U.S. 407, 416-19 (1942), and thus give no traction to OneLink's plaint.[4] A previously decided case — at least a previously decided

---

[4] Indeed, Judge (now Justice) Breyer cited and persuasively distinguished both of these cases. See New Engl. Tel. & Tel., 742 F.2d at 7-8, 10.

-16-

case not overlooked by the original panel — cannot trigger an exception to the law of the circuit rule.

The third Supreme Court opinion embraced by OneLink is more recent. In that case, however, the Court did not discuss what sort of orders are enforceable by a private party under section 401(b). Rather, the decision deals with the scope of a private right of action carved out of a different section of the Communications Act. See Global Crossing Telecomms., Inc. v. Metrophones Telecomms., Inc., 550 U.S. 45, 52-54 (2007) (discussing 47 U.S.C. § 207).[5] Global Crossing is simply not on point.

OneLink's argument against the stare decisis effect of New England Telephone has another dimension. It commends to our attention some lower court decisions that decline to follow New England Telephone. See, e.g., Alltel Tenn., Inc. v. Tenn. Pub. Serv. Comm'n, 913 F.2d 305, 308 (6th Cir. 1990); Hawaiian Tel. Co. v. PUC of Haw., 827 F.2d 1264, 1270-72 (9th Cir. 1987). Under the law of the circuit rule, however, mere disagreement by a coequal court with a panel decision will not divest that opinion of its customary stare decisis effect within the circuit. See Williams,

---

[5] Section 207 provides in pertinent part:

Any person claiming to be damaged by any common carrier subject to the provisions of [the Communications Act] . . . may bring suit for the recovery of the damages for which such common carrier may be liable . . . in any district court of the United States of competent jurisdiction; . . . .

45 F.3d at 592. That principle has especial force when the reasoning that underpins the conflicting decision or decisions was considered and expressly rejected in the challenged panel decision. That is the situation here. See New Engl. Tel. & Tel., 742 F.2d at 4-7.

The law of the circuit rule promotes important virtues, including humility, stability, and predictability of outcomes within a judicial circuit. There is no sufficient reason to disregard it here. Consequently, we are bound by our earlier decision in New England Telephone. We therefore hold that OneLink lacks standing to enforce either of the two FCC rulemaking orders at issue here.

## III. CONCLUSION

We need go no further. For the reasons elucidated above, the district court did not err in dismissing the plaintiff's amended complaint.

**Affirmed**.