# United States Court of Appeals
## For the First Circuit

Nos. 16-1302
     16-1565

KENNETH NEVOR,

Plaintiff, Appellee,

v.

MONEYPENNY HOLDINGS, LLC,

Defendant, Appellant.

APPEALS FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

[Hon. John J. McConnell, Jr., U.S. District Judge]

Before

Barron, Selya and Stahl,
Circuit Judges.

Robert P. Powers, with whom Michael R. Byrne and Melick & Porter, LLP were on brief, for appellant.
Maurice J. Cusick, with whom Vincent M. Morgera was on brief, for appellee.

November 22, 2016

**SELYA**, **Circuit Judge**.  In this maritime personal injury case, the district court awarded the plaintiff compensatory damages for past and future harms totaling nearly $1,500,000.  Adding insult to injury, the court tacked on prejudgment interest at the Rhode Island state rate of 12% per annum and entered judgment in the plaintiff's favor for $2,318,487.  The defendant appeals, challenging both the damages award and the prejudgment interest increment.

After careful consideration, we find the award of damages to be unimpugnable.  The award of prejudgment interest, though, presents greater complications: with respect to that award, we tackle a question of first impression within this circuit and, following the resolution of that question, affirm the interest award in part and reverse it in part.  The tale follows.

## I.  BACKGROUND

We rehearse the relevant facts as found by the district court, see Nevor v. Moneypenny Holdings, LLC, 2016 WL 183906 (D.R.I. Jan. 14, 2016), consistent with record support. Plaintiff-appellee Kenneth Nevor was once a professional sailor.  His experience included sailing, racing, and transporting racing yachts.  His skillset extended to maintaining and repairing sailboats, their mechanical equipment, and their electronic gear.

Nevor began sailing as a boy and — by the age of 35 — had participated in a number of elite racing events worldwide.  At

the time of the mishap giving rise to this action, Nevor was an employee of defendant-appellant Moneypenny Holdings, LLC (Moneypenny), which owned a 52-foot sailing vessel called the Vesper and a 35-foot motor support vessel called the Odd Job.

In March of 2011, Nevor was part of a crew preparing the Vesper for a regatta in the Caribbean. The Vesper was travelling in the British Virgin Islands when the members of the crew learned that they — but not the boat — needed to return to St. Thomas to clear customs. To facilitate this process, the Odd Job met the Vesper with a view toward carrying some crewmembers back to shore. When the Odd Job pulled up alongside the Vesper, the Vesper's captain directed some of the crew (including Nevor) to transfer from the Vesper to the Odd Job. The wind was blowing at between eight and twelve knots — normal for that time of year — but the sea was choppy. Still, the captain did not lash the Odd Job and Vesper together before proceeding with the transfer.

As Nevor disembarked the Vesper to board the Odd Job, the boats separated. Nevor slipped, grasping the Vesper's lifeline as he reached for the Odd Job with his foot. He was able to complete the transfer, but the stress on his right arm caused his bicep to tear from the bone.

Nevor stayed with the Vesper for two weeks after his injury to assist with race preparations. He then returned stateside to undergo surgery. Once the operation was performed,

- 3 -

he completed six months of physical therapy. Even after he had finished the prescribed course of therapy, his treating physician found residual atrophy in the reattached muscle. Several months later, Nevor visited another specialist who determined that Nevor's right arm remained weaker than his left and was unlikely to improve. This specialist concluded that Nevor could not do the heavy lifting that his previous job demanded.

In June of 2013, Nevor invoked admiralty jurisdiction, see 28 U.S.C. § 1333, and sued Moneypenny in Rhode Island's federal district court.[1] His complaint alleged negligence under the Jones Act, see 46 U.S.C. §§ 30101-30106, and unseaworthiness under general maritime law.

Following a four-day bench trial, the district court wrote a thorough and closely reasoned rescript stating its findings of fact and conclusions of law. The court awarded Nevor $1,460,458 in damages ($710,458 for loss of earnings and loss of future earning capacity and $750,000 for pain, suffering, and mental anguish).[2] See Nevor, 2016 WL 183906, at *7. The court subsequently granted Nevor's motion to add prejudgment interest to

---

[1] Nevor's complaint named James R. Swartz, Moneypenny's principal, as a codefendant. Nevor subsequently dropped Swartz as a party, though, and we make no further mention of him.

[2] Nevor's hospital and medical expenses were paid separately as part of the shipowner's obligation of maintenance and cure. See Whitman v. Miles, 387 F.3d 68, 71-72 (1st Cir. 2004).

- 4 -

the damages award.  This increment, which totaled $858,029, brought the aggregate judgment to $2,318,487 (plus costs).

These consolidated appeals ensued.[3]  In them, Moneypenny concedes liability but challenges several of the monetary components of the judgment.

## II.  ANALYSIS

Moneypenny's claims of error fall into two broad categories.  First, it offers various reasons why the award of damages should be deemed excessive.  Second, it assails the prejudgment interest award as totally inappropriate and, alternatively, says that no prejudgment interest should accrue on damages for future harm.  We address these claims sequentially.

### A.  Damages.

As an opening salvo, Moneypenny blasts the district court's stated basis for awarding economic damages (lost wages and prospective loss of earning capacity).  In its words, the court's factual findings were "clearly erroneous" and "premised on inadmissible speculation."

In the aftermath of a bench trial, we review the district court's factual findings for clear error.  See Reliance Steel Prods. Co. v. Nat'l Fire Ins. Co., 880 F.2d 575, 576 (1st Cir. 1989).  We will set aside those findings "only if, on the entire

---

[3]  Moneypenny filed notices of appeal on two separate occasions.  For simplicity's sake, we treat the appeals as a unit.

evidence, we are left with the definite and firm conviction that a mistake has been committed." Id. (citation omitted). Whether we would have reached the same result as the district court is not the issue: "[w]here there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." Id. at 577 (quoting Anderson v. City of Bessemer City, 470 U.S. 564, 574 (1985)).

This deferential standard of review applies with unabated force when a district court's findings depend wholly or in part on expert testimony. When judges act as factfinders, they are given "considerable leeway in choosing among the views of experts and in determining the weight and value to be assigned to the opinions of each expert." Reilly v. United States, 863 F.2d 149, 167 (1st Cir. 1988).

At trial, the parties presented detailed information about the sailing industry, as well as expert testimony about Nevor's physical limitations, projected wages, past and future earning capacity, vocational capabilities, and work-life expectancy. With respect to Nevor's projected wages and lost earning capacity — the focal points of the district court's economic damages calculation — Nevor's experts testified that at the time of the accident he was "at the cusp" of joining the ranks of the ultra-elite sailors who earned between $100,000 and $120,000 per year. This evidence was consistent with the fact that, in the

- 6 -

first three months of 2011 (the year of his injury), Nevor already had earned just shy of $30,000 working for Moneypenny.  The experts went on to explain that Nevor was one of "only maybe a thousand people" competing internationally at an elite level and that he had the skills and strength required to advance.  Similarly, they opined that, but for the injuries sustained in the accident, Nevor could have remained employed as a top-echelon sailor for several decades.[4]

Of course, this evidence did not go unrebutted. Moneypenny presented expert testimony that Nevor sustained virtually no loss in earning capacity as a result of the accident and that, even if not injured, he was unlikely to earn more than $100,000 per year as a sailor.

The district court sided with Nevor's experts.  It concluded that, but for the injuries sustained in the accident, Nevor "would have continued to be employed in high-level sailing" and "would have advanced as a professional sailor in his chosen field if he had not been injured."  Nevor, 2016 WL 183906, at *6.

---

[4] In the court below, Moneypenny made several unsuccessful attempts to strike the testimony of Nevor's vocational expert (Michael LaRaia).  On appeal, it complains of these denials in but a single sentence in its opening brief: a conclusory assertion that the district court abused its discretion in refusing to strike the testimony.  We thus deem the argument undeveloped and consider it waived.  See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.").

In reaching these conclusions, the court found persuasive the testimony voiced by Nevor's witnesses regarding his vocational capabilities, earning capacity, and work-life expectancy.

In this venue, Moneypenny asseverates that the compiled record offered "no reliable means of predicting the duration of Nevor's sailing career, the positions which he may have held, or the income which he might have earned."  And although Moneypenny concedes that it might have been "possible" for Nevor to reach sailing's upper echelon and earn the wages commensurate with sailing at that level, it insists that the evidence fell well short of the "reliable demonstration" benchmark set by the Supreme Court. See Jones & Laughlin Steel Corp. v. Pfeifer, 462 U.S. 523, 534-35 (1983) (explaining that "[a]lthough it may be difficult to prove when, and whether, a particular injured worker might have received [] wage increases, . . . they may be reliably demonstrated for some workers").

Contrary to Moneypenny's importunings, a reliable demonstration does not demand proof positive.  Forecasting future losses necessarily requires the trier to sift through the projections of experts, gauge the credibility of witnesses, and draw reasonable inferences from the facts.  See Johnson v. Watts Regulator Co., 63 F.3d 1129, 1138 (1st Cir. 1995); Reliance Steel, 880 F.2d at 576.  While robes and gavels, not tea leaves or crystal balls, are the tools of a trial judge's trade, some degree of

- 8 -

speculation is inherent in any such forecast. A reliable demonstration demands only that the court's prediction is reasonable, given the facts in the record. Here, we must give due weight to the court's determinations of witness credibility, its findings as to the relative persuasiveness of various experts, and its appraisal of competing facts. See Reliance Steel, 880 F.2d at 576.

Viewed through this prism, we find plentiful support in the record for the court's determination that Nevor had in prospect a top-flight racing career that was likely to be long and successful and lost it due to the injuries sustained in the accident. Consequently, we decline Moneypenny's invitation to second-guess the district court's founded determination that the evidence reliably demonstrated that Nevor was likely to move further up the ranks. In the last analysis, that determination depended upon a weighing of conflicting evidence, and such an appraisal falls peculiarly within the trial court's ken. See Reilly, 863 F.2d at 167.

Moneypenny next argues that Nevor's failure to attend a specialized vocational rehabilitation program constituted a breach of his duty to mitigate damages and should have reduced his damages award. The district court saw the matter differently and did not reduce the award on this account.

At the threshold, we note that mitigation is in the nature of an affirmative defense. See Allied Int'l, Inc. v. Int'l Longshoremen's Ass'n, 814 F.2d 32, 38-39 (1st Cir. 1987). Thus, Moneypenny bore the burden to prove by a preponderance of the evidence that Nevor "failed to take reasonable steps to hold down [his] losses." Id. As the proponent of an affirmative defense, Moneypenny also bore "the risk of equipoise." O'Neal v. McAninch, 513 U.S. 432, 444 (1995).

On appeal, Moneypenny ascribes two errors to the district court's refusal to credit its mitigation defense. We start with its suggestion that the district court was obligated to give a fuller explanation of its ruling.

The Civil Rules provide that, after a bench trial, "the court must find the facts specially and state its conclusions of law separately." Fed. R. Civ. P. 52(a)(1). This rule, however, has practical limits. A "district court [is] not required to make findings on every detail, [is] not required to discuss all of the evidence that supports each of the findings made, and [is] not required to respond individually to each evidentiary or factual contention made by the losing side." Addamax Corp. v. Open Software Found., Inc., 152 F.3d 48, 55 (1st Cir. 1998). The court's findings are adequate as long as they "make plain the basis for its disposition of the case." Valsamis v. González-Romero, 748 F.3d 61, 63 (1st Cir. 2014).

Here, the district court explained in considerable detail the basis for its findings on liability, concluding that Moneypenny was liable under both the Jones Act (for negligence) and general maritime law (for unseaworthiness). See Nevor, 2016 WL 183906, at *4-5. It then set forth (again, in considerable detail) the basis for its calculation of damages. See id. at *5-7. Those calculations rejected, albeit implicitly, Moneypenny's mitigation defense.[5] The upshot is that the court found the facts with particularity, stated its legal conclusions plainly, and explained in no uncertain terms its disposition of the case. No more was exigible to satisfy the requirements of Rule 52(a). See Damon v. Sun Co., 87 F.3d 1467, 1480 (1st Cir. 1996); see also Banerjee v. Bd. of Trs. of Smith Coll., 648 F.2d 61, 66 (1st Cir. 1981).

The second branch of Moneypenny's mitigation defense is its claim that the evidence required a finding of failure to mitigate. We disagree: the district court's implicit conclusion that Moneypenny's mitigation defense did not hold water is adequately supported in the record.

---

[5] There is no question, though, that the district court did in fact consider the mitigation defense. At trial, the court acknowledged that the parties had "thoroughly covered" and "valiantly argued" the issue, and vouchsafed that it would "take [the mitigation defense] into consideration."

The relevant facts are susceptible to succinct summarization. Moneypenny introduced evidence that one of Nevor's doctors prescribed a round of vocational rehabilitation sessions that Nevor did not attend. Nevor countered that he was never notified about this proposed regimen. He also introduced evidence that, even if he had been notified, the therapy was unavailable — the rehabilitation center that he was directed to attend treated only injuries (unlike Nevor's) arising under state workers' compensation law. We think it a commonsense proposition that a plaintiff cannot be charged with a failure to mitigate damages when the suggested mitigation measure is unavailable to him.

What is more, the record is replete with testimony that, far from avoiding therapy, Nevor avidly sought it out. On one occasion, he asked his doctor to refer him for an additional round of physical therapy. At other times, he sought therapy on his own.

The short of it is that the district court faced a fact-sensitive determination on the mitigation issue, couched in evidence that lent itself to multiple interpretations. Where, as here, "the conclusions of the [trier] depend on its election among conflicting facts or its choice of which competing inferences to draw from undisputed basic facts, appellate courts should defer to such fact-intensive findings, absent clear error." Reliance Steel, 880 F.2d at 576 (alteration in original) (quoting Irons v.

FBI, 811 F.2d 681, 684 (1st Cir. 1987)).  Such deference is appropriate in this instance, and we discern no clear error in the court's implicit conclusion that Nevor was not guilty of failing to mitigate his damages.

This brings us to Moneypenny's claim that the award of non-economic damages (for pain and suffering, mental anguish, and the like) is excessive and unsupported by the evidence.  The court's ultimate conclusion — the monetization of Nevor's non-economic harms — is assayed for abuse of discretion.  See Limone v. United States, 579 F.3d 79, 103 (1st Cir. 2009) (describing such a conclusion as a "classic example of a judgment call").  Such an award will stand unless it "shock[s] our collective conscience or raise[s] the specter of a miscarriage of justice."  Id. at 84.

We conclude that the district court's non-economic damages award finds sufficient purchase in the record.  Nevor offered ample evidence showing that he underwent significant pain and suffering, that his quality of life was reduced, and that he experienced lasting physical and emotional distress long after the accident.  He submitted to a painful surgery, endured a lengthy recovery, attended months of physical therapy sessions, and was forced to limit his physical activities.  Moreover, Nevor faces the prospect of lasting consequences because his injuries (including some residual scarring) have been found to be permanent.

- 13 -

Non-economic damages are notoriously difficult to quantify.  "[T]here is no scientific formula or measuring device which can be applied to place a precise dollar value" on pain, suffering, and other items of intangible harm.  Limone, 579 F.3d at 105 (quoting Wagenmann v. Adams, 829 F.2d 196, 216 (1st Cir. 1987)).  Given what Nevor has experienced and what he predictably faces, we find the district court's award to be within the wide universe of reasonable awards.  Though generous, the award is proportional to the weight of the evidence and is neither conscience-shocking nor a harbinger of a miscarriage of justice. Indeed, it is consistent with awards in analogous cases.  See, e.g., Bielunas v. F/V Misty Dawn, Inc., 621 F.3d 72, 80-82 (1st Cir. 2010) (affirming award of over $2,000,000 in non-economic damages where plaintiff sustained painful foot injury that resulted in disability).

For these reasons, the district court's damages award must be affirmed in full.

## B. Interest.

Moneypenny's interest-related assignments of error can be divided into two tranches.  First, Moneypenny submits that the successful Jones Act claim should have precluded any award of prejudgment interest. Second, Moneypenny submits that — even apart from his Jones Act argument — the district court should not have granted Nevor any prejudgment interest with respect to damages for

future harm.  We address these matters one by one, affording de novo review to questions of law and abuse-of-discretion review to judgment calls.  See Limone, 579 F.3d at 102.

We preface our discussion of specific issues with a synopsis of the applicable legal doctrine.  A seaman injured during the course of his employment may recover damages under a variety of statutory and common-law theories, including (as pertinent here) the Jones Act and general maritime law.  The Jones Act provides a cause of action for a seaman injured through his employer's negligence.  See 46 U.S.C. §§ 30101-30106.  Whether a plaintiff is entitled to prejudgment interest on an award of damages under the Jones Act, however, is open to question.  The prevailing view appears to be that, in pure Jones Act suits, recovery of prejudgment interest is not permitted.[6]  See Petersen v. Chesapeake & Ohio Ry. Co., 784 F.2d 732, 740 (6th Cir. 1986).  Our court has not squarely addressed this issue.

The situation is quite different with respect to general maritime law.  Under that body of law, there is a common-law cause of action for injuries resulting from the unseaworthiness of a

---

[6] There is, however, some play in the joints.  Compare Wyatt v. Penrod Drilling Co., 735 F.2d 951, 955 (5th Cir. 1984) (noting that the Fifth Circuit has "disapproved the award of prejudgment interest in a Jones Act case tried to a jury"), with Williams v. Reading & Bates Drilling Co., 750 F.2d 487, 491 (5th Cir. 1985) (holding that when a federal court sits in admiralty jurisdiction, the judge may exercise his discretion to award prejudgment interest on a Jones Act claim).

vessel on which a seaman was employed. See Poulis-Minott v. Smith, 388 F.3d 354, 366 (1st Cir. 2004). In that context, "[p]rejudgment interest is generally available." Borges v. Our Lady of the Sea Corp., 935 F.2d 436, 443 n.1 (1st Cir. 1991).

There is a split of authority about whether an injured seaman who prevails on fully aligned claims under both the Jones Act and the unseaworthiness rubric may be awarded prejudgment interest. For example, some courts of appeals have held that a seaman is not entitled to prejudgment interest when he prevails on parallel Jones Act and unseaworthiness claims. See Petersen, 784 F.2d at 741; see also Wyatt v. Penrod Drilling Co., 735 F.2d 951, 956 (5th Cir. 1984) (noting that "[i]f the court may not award prejudgment interest on the Jones Act claim, there is no separate pure admiralty item on which to allow interest" (internal alteration and citation omitted)). The Second Circuit has viewed the matter differently. When a seaman prevails on both Jones Act and unseaworthiness claims and there are no exceptional circumstances militating against an award of prejudgment interest, that court has held that the seaman is entitled to prejudgment interest on the total amount of the award. See Magee v. U.S. Lines, Inc., 976 F.2d 821, 822 (2d Cir. 1992). That rule is preferable, the court reasoned, because it permits the plaintiff to "be paid under the theory of liability that provides the most complete recovery." Id.

It is in this stormy sea that we must anchor our analysis. Moneypenny, though, attempts to circumnavigate the issue entirely. It claims that the district court's damages award was based solely on a finding of Jones Act negligence and, thus, cannot bear the weight of prejudgment interest. The record belies this claim.

In its separate written order awarding prejudgment interest, the district court explicitly found that Nevor was entitled to prejudgment interest because the damages award was, at least in part, under general maritime law (that is, for unseaworthiness). The language of the district court's earlier rescript supports this characterization. There, the court found that Moneypenny's failure to apply a non-skid product to the Odd Job's slippery side "made the [boat] unseaworthy and substantially contributed to" Nevor's injuries. Nevor, 2016 WL 183906, at *5. Additionally, the court found that Moneypenny's failure either to provide proper training to its crew or to implement appropriate safety procedures rendered both the Vesper and the Odd Job unseaworthy and further contributed to Nevor's injuries. See id.

The district court's conclusion that the damages award was based in part on a finding of unseaworthiness was not clearly erroneous. To begin, a district court's characterization of its own findings is entitled to some deference. See Martha's Vineyard Scuba Headquarters, Inc. v. Unidentified, Wrecked & Abandoned

- 17 -

Steam Vessel, 833 F.2d 1059, 1066-67 (1st Cir. 1987) (acknowledging the "special role played by the writing judge in elucidating the meaning and intendment of an order which he authored"). The court below, sitting without a jury, was entitled to weigh the evidence and to draw reasonable inferences. See Reliance Steel, 880 F.2d at 576-77. In the circumstances of this case, we conclude, without serious question, that the damages award was a "mixed" award.

Struggling to right a sinking ship, Moneypenny asserts that even if the lack of non-skid product rendered the Odd Job unseaworthy, the record does not establish that this particular unseaworthiness contributed to Nevor's injuries. We need not probe this point too deeply because, even assuming (albeit without deciding) that Moneypenny's assertion may have some force, it would not change our conclusion. The district court's findings regarding Moneypenny's failure to provide proper training and to implement appropriate safety procedures are well-documented, and those findings are alone sufficient to show that the damages award was based at least in part on a viable theory of unseaworthiness. See Crumady v. The Joachim Hendrik Fisser, 358 U.S. 423, 427 (1959) (explaining that "[u]nseaworthiness extends not only to the vessel but to the crew"); Cape Fear, Inc. v. Martin, 312 F.3d 496, 500 (1st Cir. 2002) (explaining that procedures crewmembers employ may render ship unseaworthy).

Having established that the damages award straddles both a successful Jones Act claim and a successful unseaworthiness claim, we turn to Moneypenny's contention that the presence of the Jones Act claim poisons the well and precludes an award of prejudgment interest. We assume for argument's sake — but do not decide — that a successful Jones Act claim, standing alone, would not bear prejudgment interest. Even so, we reject Moneypenny's contention. We hold that when a court, in a bench trial, awards damages based on mixed Jones Act and unseaworthiness claims, prejudgment interest is available.[7] We explain briefly.

To begin, we lay to rest a diversion. Moneypenny asserts that our analysis is controlled by the Supreme Court's decision in Miles v. Apex Marine Corp., 498 U.S. 19 (1990). There, the Court considered whether the estate of a deceased seaman could recover the seaman's future lost earnings under general maritime law. See id. at 21. The Court observed that even if it were to create an exception to the traditional rule that unseaworthiness claims do not survive a seaman's death, it would nevertheless bar the recovery of the deceased seaman's lost wages because the Jones Act — which does include a limited survival right — already prohibits such a recovery. Thus, there was no principled basis for expanding

---

[7] We take no view as to the appropriate interest rate to be applied. The court below borrowed the Rhode Island state rate for prejudgment interest in tort actions, see R.I. Gen. Laws § 9-21-10, and Moneypenny has not contested the court's use of that rate.

the remedies available in a general maritime action based on strict liability.  See id. at 33-36.

The case at hand, however, is a different kettle of fish. The Miles plaintiff wanted the Court to create a general maritime law remedy that was previously unavailable.  Here, however, Nevor seeks to have us retain a remedy — prejudgment interest on damages awarded in connection with admiralty torts — that was available long before the passage of the Jones Act.  See City of Milwaukee v. Cement Div., Nat'l. Gypsum Co., 515 U.S. 189, 195 & n.7, 196 (1995).  Seen in this light, this case fits much more closely with Atlantic Sounding Co. v. Townsend, 557 U.S. 404 (2009), in which the Court concluded that the passage of the Jones Act did not implicitly deprive plaintiffs of their longstanding right to recover those damages historically available under general maritime law.  See id. at 408 (holding that the Jones Act did not preclude plaintiffs from seeking punitive damages in combined Jones Act and general maritime law cases); id. at 420 (noting that "[u]nlike the situation presented in Miles, both the general maritime cause of action . . . and the remedy . . . were well established before the passage of the Jones Act").

With this potential distraction laid to rest, we return to the question of whether the intertwining of Jones Act and unseaworthiness claims precludes Nevor from any access to prejudgment interest.  We approach this conundrum mindful that

"prejudgment interest traditionally has been considered part of the compensation due plaintiff." Osterneck v. Ernst & Whinney, 489 U.S. 169, 175 (1989). The "essential rationale for awarding prejudgment interest is to ensure that an injured party is fully compensated for its loss," and "[f]ull compensation has long been recognized as a basic principle of admiralty law." City of Milwaukee, 515 U.S. at 195-96. Put simply, an award of prejudgment interest helps achieve the laudable goal of making an injured plaintiff whole. See id. at 196. It follows that adopting Moneypenny's grudging approach to prejudgment interest would prevent many prevailing plaintiffs from recovering damages generally considered part of their due compensation. See Osterneck, 489 U.S. at 175.

To be sure, a plaintiff who recovers damages for a general maritime law claim, such as an unseaworthiness claim, may lose his right to prejudgment interest if "exceptional circumstances" make an award of interest inequitable. City of Milwaukee, 515 U.S. at 194-95 (citation omitted). Such circumstances might include, say, undue delay by the prevailing party, exorbitant overestimation of damages, or bad faith. See Anderson v. Whittaker Corp., 894 F.2d 804, 809 (6th Cir. 1990) (citation omitted); Alkmeon Naviera, S.A. v. M/V Marina L, 633 F.2d 789, 797-98 (9th Cir. 1980) (collecting cases). But the

record here evinces no such disabling circumstance: Nevor has prosecuted his case forcefully, but not unreasonably so.[8]

Even though our court has not decided the precise question with which we are confronted, a persuasive analogy exists. We have held that when a plaintiff raises claims under parallel causes of action (both federal and state, for example) and receives a damages award straddling both of those fully aligned claims, the defendant may not cite the presence of a more restricted remedy on one claim to deny the plaintiff a more expansive remedy on the other claim. See Tobin v. Liberty Mut. Ins. Co., 553 F.3d 121, 146 (1st Cir. 2009) (explaining that "a successful plaintiff's right to a particular remedy under federal law does not trump his right to a more advantageous remedy under state law"). Thus, "[w]hen federal and state claims overlap, the plaintiff may choose to be awarded damages based on state law if that law offers a more generous outcome than federal law." Id.; accord Freeman v. Package Mach. Co., 865 F.2d 1331, 1345 (1st Cir. 1988) (noting that although a prevailing plaintiff in such a situation is "entitled

_____

[8] The mere fact that Nevor elected to sue simultaneously under both the Jones Act and general maritime law is not itself an exceptional circumstance. See McAllister v. Magnolia Petrol. Co., 357 U.S. 221, 224-25 (1958) (explaining that if a seaman "is to sue for both unseaworthiness [under general maritime law] and Jones Act negligence, he must do so in a single proceeding" and that such an injured seaman will "rarely forego" his right to seek relief under both causes of action).

to only a single slice of the pie[,] . . . the choice of the slice [is] his").

This same paradigm seems altogether appropriate where, as here, a plaintiff has prevailed on fully aligned Jones Act and unseaworthiness claims.  After all, the plaintiff is entitled to interest on the unseaworthiness claim and there is no logical reason why his broader success should strip him of that entitlement.

There is yet another leg to our voyage.  Although we hold that the district court was correct in awarding some prejudgment interest (due to the successful unseaworthiness claim), we nonetheless agree with Moneypenny that the court went too far: in fashioning an award of prejudgment interest, the court should first have set to one side the damages attributable to future harm.

In this circuit, the law is well-established that "prejudgment interest should not be awarded on damages for future loss, either liquidated or unliquidated."  Borges, 935 F.2d at 444-45 (collecting cases).  This is a reflection of the commonsense notion that interest should not accrue before the harm itself has occurred.  See id. at 445.

The law of the circuit doctrine requires this court (and, by extension, all lower courts within this circuit) to respect, in the absence of supervening authority, the decisions of prior panels

- 23 -

on the same issue. See San Juan Cable LLC v. P.R. Tel. Co., 612 F.3d 25, 33 (1st Cir. 2010). "Once we have decided a legal question and articulated our reasoning, there is usually no need for us to repastinate the same soil when another case presents essentially the same legal question." Vander Luitgaren v. Sun Life Assur. Co. of Canada, 765 F.3d 59, 61 (1st Cir. 2014). Although there are a few exceptions to this rule, see San Juan Cable, 612 F.3d at 33 (describing narrow exceptions to law of the circuit doctrine), none applies here. We conclude, therefore, that the district court was bound to follow Borges, and its failure to do so constitutes reversible error.[9] Prejudgment interest must be limited to items of loss that were in the rear-view mirror at the time of the damages award and the concomitant entry of judgment (e.g., wages and earning capacity already lost, pain and suffering already experienced, and the like). Correspondingly, the award of prejudgment interest must omit items of loss not yet accrued as of that date (e.g., future loss of wages and earning capacity, future pain and suffering, and the like). On remand, the district court

---

[9] At oral argument, Nevor insisted that our opinion in Rivera v. Rederi A/B Nordstjernan, 456 F.2d 970 (1st Cir. 1972), supports his receipt of prejudgment interest on damages for future harms. This is magical thinking: Rivera held that trial judges have discretion to award prejudgment interest in some cases, but it did not address the propriety of awarding such interest with respect to damages for future harms. See id. at 976.

must reformulate its award of prejudgment interest in accordance with these principles.

## III.  CONCLUSION

We need go no further.  For the reasons elucidated above, we affirm the damages award; affirm the award of prejudgment interest in part and reverse it in part; and remand for the entry of an amended judgment, nunc pro tunc, consistent with this opinion.  The amended judgment shall, of course, carry post-judgment interest at the federal rate, see 28 U.S.C. § 1961(a), which will commence to run (by virtue of the nunc pro tunc provision) from the date of the original judgment, see Fiorentino v. Rio Mar Assocs. LP, SE, 626 F.3d 648, 652 (1st Cir. 2010).

**Affirmed in part, reversed in part, and remanded.  Two-thirds costs shall be taxed in favor of the plaintiff.**