COX, JACK S., Associate Judge.
Appellants, Christos N. Kritikos and Jupiter Holding Co., LLC, appeal the final *886 judgment of the trial court entered in favor of the Appellee, Andersen Builders, awarding damages based upon a jury verdict and foreclosing on a construction lien pursuant to Chapter 713, Florida Statutes. Andersen Builders cross appeals that portion of the final judgment allowing for a set-off of construction delay damages in favor of Kritikos and Jupiter Holding Co., LLC. Because Kritikos was erroneously precluded from offering certain evidence of damages against Andersen, we reverse for a new trial on damages. On the cross appeal, we affirm.

The Agreement

In 2003, Kritikos purchased ocean-front property on Jupiter Island in Martin County, Florida. Kritikos hired a New York architect, Peter Gluck, to design the home. Gluck’s corporation, ARCS Construction Services, Inc., contracted with Kritikos to serve as a construction manager. Gluck did not have a Florida contractor’s license. As an agent of Kritikos, Gluck entered into a construction agreement with Andersen Builders, Inc., a licensed general contractor.
The amended construction agreement is less than two and a half pages in total. On its face, it is not an agreement by the contractor to construct the entire house but, rather, an agreement for Andersen to perform specific services:
• Andersen was to provide supervision and coordination of the trades, and it was required to have a working superintendent and a laborer present full-time to ensure hands-on supervision of the project and to coordinate with local and state building officials.
• Andersen was to work with the architect’s personnel, who would be located onsite, to provide incidental support to the architect in obtaining bids from all necessary subcontractors. But upon awarding the bid, the architect would prepare all necessary contracts and/or vendor agreements for Andersen’s approval.
• All bids from subcontractors were to be initialed by the architect, with Andersen providing one additional copy, if needed, to ensure effective cost control of the project.
• All contract documents were to be prepared by the architect and forwarded to Andersen for final review and signature.
• All invoices were to be paid by the architect, while Andersen was required to pay incidental invoices that totaled less than $1,000 and submit to the architect a monthly itemized invoice of all “paid in full” invoices and “architect to pay direct” invoices.
• The architect was to have a full-time architect onsite to cooperate with subcontractors and handle all administrative activities necessary to complete the project.
• Andersen was to be onsite with a full-time working superintendent to oversee all issues surrounding actual construction of the project.
Pursuant to the contract, compensation was to be allocated as follows:
• The management fee of $350,000, which was to be based on contributions made directly by the architect (Gluck) to the project, was to be paid out to Andersen at $25,000 per month over a 14-month project time period.
• Andersen was to be paid $30,000 for providing the builder’s license and insurance for the duration of the project.
• The direct labor Andersen supplied would be billed at cost plus 15% with the following labor breakdown: $40 per hour for the supervisor, $35 per hour for the carpenters, $35 per hour *887 for the painters, and $25 per hour for the laborers.
The entire project was anticipated to take fourteen months to complete. Therefore, based on the agreed contract price, Andersen would have been entitled to a total of $380,000 plus the cost of his direct labor supplied to the job for supervisors, carpenters, painters, and laborers.
The original construction budget estimate was just over $4 million. However, by the original contemplated date of completion, the house was approximately 60% complete and the projected cost of the construction budget had doubled to $8 million. Approximately four months after the original completion date, Andersen was terminated by Kritikos and taken off the job.

Procedural Posture

Andersen filed a complaint against Kriti-kos for breach of contract, unjust enrichment[1], and foreclosure of a construction hen. Kritikos pled an affirmative defense for set-off and countersued Andersen for breach of contract, negligence, and a fraudulent lien, all based on his claims of construction defects, overcharges by Andersen, and delay damages. In a separate lawsuit against Peter Gluck and ARCS Construction, which included a breach of contract claim, Kritikos also sought damages for construction defects, overcharges, and delay.
The two lawsuits were consolidated and tried together in a month-long jury trial, at the close of which both parties submitted multiple motions for directed verdicts. The trial court eventually entered directed verdicts against Kritikos, denying his affirmative defense of set-off and finding against his counterclaim for construction defects. According to the trial judge, the basis of this ruling was that there had “not been one scintilla of evidence” of the “cost of correcting the work” or overbilling. It appears that the court read Barile Excavating & Pipeline Co. v. Kendall Props. Inc., 462 So.2d 1129 (Fla. 4th DCA 1984) for the proposition that, to recover damages for construction defects, a plaintiff must show that the defects were repaired and base the damages on the actual cost of the repairs, rather than using the estimated cost of completing the work according to the contract. It was Kritikos’ position that much of the defective work had been the subject of a design change, so that the proper proof of damages could not be the actual cost of repair, but an estimate of what it would have cost to complete the work according to the original contract.
Although Kritikos was limited to delay damages in its suit against Andersen, the trial court ruled differently with respect to Kritikos’ breach of contract claim against ARCS Construction. There, the court allowed Kritikos to seek damages for construction defects, overcharges, and delay based on the same evidence that had been precluded in the Andersen/Kritikos case.
The jury awarded $548,817.04 with interest on Andersen’s breach of contract *888 action, which was then set-off by Kritikos’s $130,000 award, plus interest, for delay damages. The final judgment placed a $581,912.33 construction lien on the property in favor of Andersen. On Kritikos’ breach of contract claim against ARCS Construction, where Kritikos was allowed to present his full evidence on damages, the jury awarded Kritikos $1,139,343, the full sum that had been requested in closing argument.[2]
Both parties appeal the final judgment, and each party raises issues contesting the final calculation of the construction lien.

The Directed Verdicts

The trial court misapplied Barile Excavating in granting directed verdicts in favor of Andersen. As Kritikos argues, Barile Excavating “stands only for the proposition that where an owner/plaintiff actually completes ” work that a contractor has failed to complete, the proper measure of damages in a breach of contract action against the contractor is the “actual cost” to complete the work and not “estimates as to the cost of completion.” 462 So.2d at 1130. Kritikos offered evidence that many of the items at issue had not been completed according to the original contract and he was entitled to this view of the evidence at the time the court granted a directed verdict.
Barile Excavating relied on Grossman Holdings Limited, v. Hourihan, where the Supreme Court held that one measure of damages for an unfinished construction contract is the “reasonable cost of construction and completion in accordance with the contract, if this is possible and does not involve unreasonable economic waste.” 414 So.2d 1037, 1039 (Fla.1982) (quoting Restatement (First) of Contracts § 346(l)(a)(i) (1932)). Nothing in Gross-man compels the conclusion that damages for breach of a construction contract are not recoverable unless the plaintiff offers proof of the cost of completed repairs for the faulty construction. In fact, the Supreme Court has approved the use of estimates to establish the cost of correcting a construction defect. See Davis v. Stow, 60 So.2d 630, 631 (Fla.1952); see also B & J Holding Corp. v. Weiss, 353 So.2d 141, 143 (Fla. 3d DCA 1977) (rejecting the notion that plaintiffs in a construction defects case were required to offer proof of “sums incurred to correct or repair the deficiencies” as opposed to estimates of what would “have to be incurred”).
Since the case involves a factual scenario similar to the case at bar — reconstruction under a different design — Justice (then Judge) Grimes’ description of the measure of damages in Temple Beth Sholom & Jewish Center, Inc. v. Thyne Construction Corp., 399 So.2d 525, 526 (Fla. 2d DCA 1981), is especially on point:
The proper measure of damages for construction defects is the cost of correcting the defects, except in certain instances where the corrections involve an unreasonable destruction of the structure and a cost which is grossly disproportionate to the results to be obtained. If in the course of making repairs the owner elects to adopt a more expensive design, the recovery should be limited to what would have been the reasonable cost of repair according to the original design.
(Citations omitted).
Tuttle/White Constructors, Inc. v. Montgomery Elevator Co., 385 So.2d 98 (Fla. 5th DCA 1980), does not compel a different result. That case stated the “general rule” that the non-defaulting party in an *889 elevator installation contract “must show actual expenditures occasioned by the breach.” Id. at 100. As authority for that rule, Tuttle/White, cited to R.K. Cooper Builders, Inc. v. Free-Lock Ceilings, Inc., 219 So.2d 87, 88 (Fla. 3d DCA 1969), a case that rejected the notion that damages should be measured by the reasonable value of work and materials when there is evidence of “actual expenditures, made in good faith, that are necessary to complete the job covered by the original contract.” The court held that when a party has actually expended money to complete a job, the defaulting party cannot complain that he spent too much, absent evidence of “waste, extravagance, or lack of good faith.” Id. at 89. Tuttle-White and R.K. Cooper concern the “general rule” that applies where a party has spent money to correct damages resulting from a breach of contract; the cases do not support the conclusion that a plaintiff must offer evidence of completed repairs in every breach of construction contract case. This is especially true where design modifications resulted in changes to the design in the original contract.

Delay Damages

Delay damages were properly presented to the jury. By their very nature, delay damages may not be subject to exact calculation, making the owner’s opinion of the value of his loss of use of his property admissible and relevant. In the case at hand, the jury made a determination that the contractor breached the contract; the contractor then had to offer counter-evidence as to the delay claim. Under such circumstances, the jury is charged with the duty to weigh the evidence in determining the verdict. That portion of the final judgment finding delay damages in the amount of $130,000, having been properly decided by the jury as trier of fact, is therefore affirmed and shall reduce the construction lien amount.
We reverse the remaining portion of the final judgment and remand to the trial court for a new trial on damages and the amount of the construction lien.
We also reverse the final judgment awarding attorney’s fees and costs for a redetermination of entitlement to attorney’s fees and their amount. Appellate attorney’s fees and costs shall be awarded to the prevailing party under section 713.29, Florida Statutes (2006), after retrial.

Affirmed in part, reversed in part, and remanded.

GROSS and CONNER, JJ., concur.

. Although the complaint described the cause of action as "unjust enrichment,” it appears that Andersen stated a claim for a contract implied in fact for "work [that] was performed at the request of the OWNER and with the knowledge and consent of the OWNER.” "Common examples of contracts implied in fact are where a person performs services at another's request, or ‘where services are rendered by one person for another without his expressed request, but with his knowledge, and under circumstances’ fairly raising the presumption that the parties understood and intended that compensation was to be paid.” Commerce P’ship 8098 Ltd. P’ship v. Equity Contracting Co., 695 So.2d 383, 386 (Fla. 4th DCA 1997) (quoting Lewis v. Meginniss, 30 Fla. 419, 12 So. 19, 21 (1892)).

. An appeal was taken from the ARCS Construction final judgment, but the appeal was dismissed prior to briefing.