# Third District Court of Appeal

## State of Florida

Opinion filed December 14, 2016.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D15-2239
Lower Tribunal No. 10-61979
_____

**Magnum Construction Management Corp., etc., et al.,**
Appellants,

vs.

**The City of Miami Beach, Florida,**
Appellee.

An Appeal from the Circuit Court for Miami-Dade County, John W. Thornton, Jr., Judge.

Armas & Bertran, and J. Alfredo De Armas and Eduardo E. Bertran, for appellants.

Lydecker Diaz, and Joan Carlos Wizel and Colby E. Grossman, for appellee.

Before ROTHENBERG, FERNANDEZ, and LOGUE, JJ.

ROTHENBERG, J.

Magnum Construction Management Corporation ("MCM") and its surety, Travelers Casualty and Surety Company of America ("Travelers"), appeal the trial court's entry of a final judgment against them and in favor of the City of Miami Beach, Florida ("the City"), who claimed, in part, that MCM was liable for playground defects and landscaping defects at South Pointe Park ("South Pointe Park" or "the park"). Because the City failed to provide MCM with an opportunity to cure the defects in the playground, as required by the contract between the parties, we reverse the trial court's finding that MCM was liable for the playground defects. Additionally, because the trial court's award of damages in connection with the landscaping defects on the project was speculative, we reverse the award and remand for a new trial on damages.

## BACKGROUND

The underlying lawsuit arose out of a construction project that was intended to redesign and improve South Pointe Park. The City awarded Hargreaves Associates, Inc. ("Hargreaves") the contract for designing the park and supervising the construction project. Thereafter, the City awarded MCM the general contract for the construction of the park. Travelers issued a performance bond for the project and named MCM as the principle and the City as the obligee.

The park was designed to include, in part, a new children's playground and a variety of new grassy turfs and other landscaping features. Construction

2

commenced in 2007, and on March 20, 2009, Hargreaves issued a Certificate of Substantial Completion, which according to the contract documents indicated that "all conditions and requirements of permits and regulatory agencies have been satisfied and the Work, is substantially complete in accordance with the Contract Documents, so the Project is available for beneficial occupancy by CITY." Although Hargreaves stopped working on the park by October 2009 due to a payment dispute Hargreaves had with the City, the City did not officially terminate its contract with Hargreaves until 2011, and in the interim, the City did not hire a replacement for Hargreaves.

In the aftermath of a major flood in 2009, several aspects of the park's landscaping began to decline, including the deterioration of the sod in certain areas of the park. Although the parties attempted to maintain the park and remediate the problems with the landscaping features, when it became obvious that these attempts were not going to solve the problem, the City hired Rosenberg Gardner Design to create a remediation plan. It was eventually determined that one of the primary causes for the problems with the sod and other landscaping features was the over compaction of the soil, and the City ultimately awarded Superior Landscaping & Lawn Service, Inc. the construction bid to remediate the park.

In addition to the landscaping defects, it also became apparent that some of the aspects of the park's playground were not in compliance with certain

contractually required safety standards. On December 6, 2010, the City unilaterally performed an audit of the playground and initiated the underlying litigation. As the trial court correctly noted below, several of the playground defects were minor and could have been easily corrected, such as a missing slide side rail, properly sized metal cap covers, and the relocation of a sculpture. The City did not, however, offer MCM the opportunity to repair or cure any of the defects in the playground, but instead removed, redesigned, and replaced the playground in its entirety. It is particularly noteworthy that the City's own expert witness, Teri Hendy, never recommended that the playground be entirely removed.[1]

After a bench trial, the trial court entered a verdict adjudicating the City's claims against MCM, Travelers, and Hargreaves. The trial court found that: (1) MCM was liable for breach of contract and breach of warranty; (2) Travelers was liable for breach of performance; and (3) Hargreaves was liable for breach of contract, negligence, and negligence per se.

As to MCM's liability for the playground defects, the trial court specifically found that, although the City did not agree to work with MCM to prepare a joint audit of the playground and never provided MCM with an opportunity to cure the deficiencies in the playground, the City suffered damages because the playground

---

[1] Additionally, Victor Lowry, Hargreaves's expert witness, testified at trial that all of the defects in the playground could have been repaired, and Juan Munilla, one of MCM's fact witnesses, testified that each of the safety defects identified by Teri Hendy were fixable.

did not comply with the safety standards in the contract documents. The trial court, however, found that the City's complete removal and replacement of the playground was excessive, and therefore reduced the damages accordingly.

As to MCM's liability for the subgrade, sod, and landscaping defects, the trial court found that the City was entitled to be reimbursed for the remediation of the defects in the park, and that MCM was partially at fault for failing to recognize that over compacting the soil would cause the grass and landscaping to fail. However, the trial court also found that the City was not entitled to a betterment, which the trial court calculated as the difference between the total amount sought by the City and the entire damage award. After the trial court entered a final judgment, MCM and Travelers timely appealed.[2]

## ANALYSIS

### I. Liability for the playground defects

MCM argues that it cannot be held liable for the playground defects because the City never provided MCM with an opportunity to cure any of the playground defects, as required by the contract documents. Because section 25.3 of the General Conditions of the contract documents plainly provides for an opportunity to cure, we agree.

Section 25.3 provides as follows:

[2] Hargreaves has separately appealed, and the two appeals were consolidated only for purposes of the record.

5

If, within one (1) year after the date of substantial completion or such longer period of time as may be prescribed by the terms of any applicable special warranty required by the Contract Documents, or by any specific provision of the Contract Documents, any of the Work is found to be defective or not in accordance with the Contract Documents, CONTRACTOR, after receipt of written notice from CITY, shall promptly correct such defective or nonconforming Work within the time specified by the CITY without cost to CITY, to do so.

This provision requires the City to notify MCM, the contractor, of any defects it finds in MCM's work. Thereafter, MCM "shall" correct the defective work within the time specified by the City. It follows, therefore, that the City was required to notify MCM of any defective work and provide MCM with a period of time in which MCM must cure the identified defects.

Although section 25.3 is dispositive of this issue, we note that had the contract been performed as intended, MCM would also have been given other opportunities to cure the playground defects through the project's "consultant," Hargreaves. For example, section 25.1 states as follows: "CONSULTANT shall have the authority to reject or disapprove work which CONSULTANT finds to be defective. If required by CONSULTANT, CONTRACTOR shall promptly either correct all defective work or remove such defective work and replace it with nondefective work." Similarly, the contract contains an alternative dispute resolution provision in section 12.1, which states as follows:

To prevent all disputes and litigation, it is agreed by the parties hereto that CONSULTANT **shall decide all questions, claims, difficulties and disputes of whatever nature** which may arise relative to the . . .

6

> fulfillment of this Contract . . . and CONSULTANT's estimates and
> decisions upon all claims, questions, difficulties and disputes shall be
> final and binding to the extent provided in Section 12.2.

(emphasis added). Thus, either pursuant to section 25.1 or 12.1, the consultant, Hargreaves, had the obligation to make determinations as to MCM's work and to order MCM to correct any defective work. MCM would then have had a contractual period of time to cure any defective work identified by Hargreaves. However, after Hargreaves stopped working on the park in October 2009 due to its payment dispute with the City, and the City failed to replace Hargreaves, no consultant was available to provide MCM with notice of any defective work or to provide MCM with an opportunity to cure. Thus, the obligation fell on the City to insure that these contract provisions, which provided MCM with opportunities to cure any defects in its work product, were fully honored, and the City's failure to provide a replacement consultant frustrated these several provisions that were intended to prevent litigation between the parties. See N. Am. Van Lines v. Collyer, 616 So. 2d 177, 179 (Fla. 5th DCA 1993) (stating that "a party who, by his own acts, prevents performance of a contract provision cannot take advantage of his own wrong"); see also Knowles v. Henderson, 22 So. 2d 384, 386 (Fla. 1945).

Additionally, the trial court expressly found that "MCM admitted its responsibility to correct the Playground equipment deficiencies, but the CITY did

7

not agree to work with them to prepare a joint audit and **never provided MCM an opportunity to cure deficiencies**." (emphasis added). Instead, the City unilaterally decided to remove the playground in its entirety. The City has not cross-appealed these findings in the trial court's verdict, and any objection to them on appeal has accordingly been waived. State v. City of N. Miami Beach, 108 So. 2d 764, 765 (Fla. 1959); Philip J. Padavano, Florida Appellate Practice § 8:10 at 173 (2016 ed.) ("Although an appellate court may affirm an order based on a point not made by the appellee or respondent, the court will not reverse an order based on a point that was not made by the appellant or petitioner.").

Because MCM was not provided with an opportunity to cure the defects in the playground, as required by the contract documents, we find that the trial court erred by holding MCM liable as to the playground defects. Underwater Eng'g Servs., Inc. v. Util. Bd. of City of Key W., 194 So. 3d 437, 445 (Fla. 3d DCA 2016) (holding that the trial court erred by entering judgment in favor of the plaintiff where the contractor was not provided with the contractually required notice and opportunity to cure the alleged defects in the project); see also City of Hollywood v. Diamond Parking, Inc., 950 So. 2d 472, 474 (Fla. 4th DCA 2007).

## II. The trial court's damages award for the landscaping defects

MCM contends that the trial court's award of damages for the landscaping defects was speculative, and we agree. The City sought approximately $3 million

in damages against MCM and Hargreaves in connection with the landscaping defects, but the trial court only awarded the City $1,290,037. The trial court stated that the difference between its total award and the amount sought by the City constituted a "betterment," which the trial court defined as aspects of the City's remediation plan which improved upon and differed significantly from the original designs and specifications in the contract documents.

The trial court was correct to exclude betterments from its award, as the measure of damages for breaching a construction contract is "the reasonable cost of construction and completion **in accordance with the contract**, if this is possible and does not involve unreasonable economic waste." Grossman Holdings Ltd. v. Hourihan, 414 So. 2d 1037, 1039 (Fla. 1982) (quoting § 346(1)(a), Restatement (First) of Contracts (1932)) (emphasis added); Kritikos v. Andersen, 125 So. 3d 885, 888 (Fla. 4th DCA 2013) (stating that if an owner elects to adopt a more expensive design in the course of making repairs in a construction defect case, then "the recovery should be limited to what would have been **the reasonable cost of repair according to the original design**") (quoting Temple Beth Sholom & Jewish Ctr., Inc. v. Thyne Constr. Corp., 399 So. 2d 525, 526 (Fla. 2d DCA 1981)) (emphasis added).[3]

---

[3] The measure of damages in a breach of warranty action similarly does not include what the trial court defined as betterments. See §§ 672.714, 672.715, Fla. Stat. (2010); Miles v. Kavanaugh, 350 So. 2d 1090, 1093 (Fla. 3d DCA 1977).

However, the City has not cited to any evidence and we have found no evidence in the record as to the **value** of the betterments in the remediation plan, or what it would have cost to restore the City "to the condition [it] would have been in if the contract had been performed." Grossman Holdings Ltd., 414 So. 2d at 1039. The only measure of damages provided by the City was the costs associated with the planning, permitting, and construction of a park that is fundamentally different from the one it contracted with MCM to build. Therefore, we find that the trial court speculated as to the value of the betterments in the City's remediation plan and, thus, speculated in its ultimate calculation of the damages owed to the City in connection with the landscaping defects in the park. Smith v. Austin Dev. Co., 538 So. 2d 128, 129 (Fla. 2d DCA 1989) ("Damages cannot be based upon speculation or guesswork, but must have some reasonable basis in fact."); Kingswharf, Ltd. v. Kranz, 545 So. 2d 276, 278 (Fla. 3d DCA 1989) (reversing a speculative damage award in a breach of construction contract case and remanding for a new trial on damages). We find the City's remaining arguments are without merit, and we therefore decline to specifically address them here.

## CONCLUSION

In summary, because the City never provided MCM with an opportunity to cure the defects in the playground, as required by section 25.3 of the contract, the trial court erred by holding MCM liable for the playground defects. The trial court

10

also erred by speculating as to the damages the City suffered in connection with the landscaping defects. We therefore reverse the trial court's entry of a final judgment against MCM for the playground defects, as well as the trial court's award of damages as to the landscaping defects. We remand for a new trial on damages as to the landscaping defects alone.

Reversed and remanded.